# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 14-1220V**
**Filed: April 5, 2017**
TO BE PUBLISHED

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| BRANDY ROJAS, | * | |
| | * | |
| Petitioner, | * | |
| v. | * | |
| | * | Attorneys' Fees and Costs; |
| SECRETARY OF HEALTH | * | Special Processing Unit ("SPU"); |
| AND HUMAN SERVICES, | * | Hourly Rates |
| | * | |
| Respondent. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

*Samantha P. Travis, Brian & Travis, Kalispell, MT, for petitioner.*
*Alexis B. Babcock, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Dorsey,** Chief Special Master:

On December 22, 2014, Brandy Rojas filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that as a result of receiving a trivalent influenza ("flu") vaccination on October 29, 2013, she suffered cause-in-fact injuries to her left shoulder including Complex Regional Pain Syndrome ("CRPS") and Myofascial Pain Syndrome. Petition at 1. On March 10, 2015, a ruling on entitlement issued finding petitioner entitled to compensation for a shoulder injury related to vaccine administration ("SIRVA"). (ECF No. 12.) On June 24, 2016, petitioner was awarded damages based on respondent's proffer. (ECF No. 37.) Petitioner now moves for attorneys' fees and costs, which are awarded in the amount of $51,131.97, reduced from $73,258.52 for the reasons described below.

---

[1] Because this decision contains a reasoned explanation for the action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.     Procedural History and Party Positions

On December 13, 2016, petitioner filed a motion for attorneys' fees and costs through her attorney of record, Samantha Travis. The fees were incurred by two separate firms – Henning Keedy & Lee, PLLC, and Bryan & Travis, PLLP.[3] (ECF No. 42.)  Petitioner requested attorneys' fees in the amount of $47,489.50[4] and costs in the amount of $25,994.02.[5]  (*Id.*, p. 5.)  In compliance with General Order No. 9, petitioner filed a signed statement indicating that she incurred no expenses in pursuing her claim. (*Id.*, p. 72.)

In her initial motion, petitioner did not discuss her attorneys' hourly rates, but included billing records reflecting an hourly rate of $325 per hour for Ms. Travis for work performed from 2014 through 2016.  (ECF No. 42, pp. 57-63.) Mr. Henning and Ms. Henning-Rutz also billed at $325 per hour for work performed in 2014 and 2015. (ECF No. 42, p. 9.)  Paralegal hours were billed at an hourly rate of $90.00 per hour at the firm of Henning Keedy & Lee and $75.00 per hour at the firm of Bryan & Travis.[6] (*Id.*, pp. 9, 63.)

Petitioner was subsequently ordered to file a supplemental brief in support of the application of attorneys' fees and costs. (ECF No. 43.)  Petitioner was instructed to address "the basis for the requested hourly rates, including an affidavit identifying the date of her first bar admission and a description of her prior legal experience." (*Id.*)

On January 12, 2017, petitioner filed a memorandum in support of her application and an affidavit of counsel. (ECF No. 44.)  Petitioner explained that her counsel's requested rate of $325 per hour represents a reasonable forum rate for an attorney with 8-10 years of experience consistent with the guidance in the vaccine decision *McCulloch v. HHS*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

---

[3] Petitioner requests, however, that the fees be payable in "one check made out to Bryan & Travis, PLLP and Petitioner." (ECF No. 48)  Petitioner's counsel represented that "[c]ounsel for petitioner has reached an agreement with the firm of Henning, Keedy & Lee, PLLC, regarding dispersal of funds received pursuant to the Fee Petition and counsel for Petitioner is responsible for paying out all costs advanced upon receipt." (*Id.*)  Respondent does not object to this request. (ECF No. 50.)

[4] This amount is further broken down as follows:  $34,689.73 incurred by the firm of Henning Keedy & Lee, PLLC, including $26,650.00 in billing by Ms. Travis under The Law Office of Samantha Travis, PLLC, $1,495.00 in billing by Lee Henning, Esq., $2,242.50 in billing by Rebecca Henning-Rutz, Esq., and $1,017.00 in billing by two paralegals; and $16,085.00 incurred by the firm of Bryan & Travis, PLLP, including $15,860.00 in billing by Ms. Travis and $225.00 in paralegal billing. (ECF No. 42, p. 5.)

[5] This amount includes $3,285.23 in costs to the firm of Henning Keedy & Lee, PLLC, $44.37 in costs to the firm of Bryan & Travis, PLLP, and $22,664.42 in separately listed charges by ReEntry Rehabilitation Services, Inc. (ECF No. 42, p. 5.)  The costs charged by ReEntry Rehabilitation Services, Inc. were incurred in the preparation of petitioner's life care plan in this case.  The life care plan was developed by Helen M. Woodward, M.A., a rehabilitation counselor. (ECF No. 42, p. 65.)  Although the attorneys in this case are located in Kalispell, Montana, ReEntry is located in Lakewood, Colorado. (*Id.*)

[6] There is no evidence in the record regarding appropriate paralegal rates; however, the undersigned finds the overall amounts at issue and the requested rates reasonable.  *See, e.g., Auch v. HHS*, No. 12-673V, 2016 WL3944701 (Fed. Cl. Spec. Mstr. May 20, 2016) (applying local paralegal rates for Cheyenne, Wyoming, ranging from $108 to $112 per hour.)

The accompanying attorney affidavit confirmed that Ms. Travis is a May 2008 graduate of the University of Montana School of Law with a certificate of specialization in environmental and natural resources law. (ECF No. 44-1, pp. 1-2.) She was admitted to practice law in the State of Montana in September 2008 and has practiced law consistently in that state since admission. (*Id*.) For two years she served as a Special Assistant Attorney General for the State of Montana Department of Environmental Quality, but has otherwise engaged in civil litigation in private practice. (*Id*., p. 2.) She was admitted to practice before the U.S. Court of Federal Claims in 2014. (*Id*.)

Ms. Travis cited a prior decision by Special Master Corcoran as evidence that her requested hourly rate of $325 has been approved as reasonable. (ECF No. 44-1, p. 2 (citing *Smith v. HHS*, No. 14-1074V, 2016 WL 7574691 (Fed. Cl. Spec. Mstr. Nov. 21, 2016).) In *Smith*, the special master noted that respondent did not object to the sum of attorneys' fees and costs requested and approved the requested amount. *Smith*, 2016 WL 7574691, at *1. The decision does not directly address counsel's hourly rate.

In a status conference held January 24, 2017, the staff attorney managing this case advised petitioner's counsel of the undersigned's view that "the current record is insufficient to determine that counsel is entitled to an award based on a forum rate, as opposed to a local rate, under applicable precedent." (ECF No. 45.) Petitioner's counsel was provided another opportunity to provide a supplemental submission regarding the forum versus local rate analysis. (*Id*.)

On February 23, 2017, petitioner submitted a second supplemental brief. (ECF No. 46.) Petitioner maintained that her counsel was entitled to a $325 per hour forum rate. (*Id*.) Petitioner identified applicable local rates of $250 and $260 per hour for work performed in 2015 and 2016 respectively and argued that the resulting 20% difference compared to her requested rate of $325 per hour is not very significantly different within the meaning of *Avera v. HHS*, 515 F.3d 1343 (Fed. Cir. 2008)(holding that Vaccine cases compensate attorneys at the forum rate unless the local rates are very significantly lower.).[7]

Petitioner also included affidavits by attorneys Henning and Henning-Rutz. (ECF Nos. 46-3, 46-4.) Mr. Henning avers that he has been licensed to practice law in Utah since 1985 and in Montana since 1995, practicing primarily in areas of insurance defense, complex business litigation, and plaintiff's personal injury. (ECF No. 46-3, p. 2.) He indicates that his most recent hourly rate in Montana is $300 an hour, but

---

[7] Of note, petitioner's 20% calculation is not consistent with the method of calculation typically used in the Vaccine Program. Special masters commonly express the differential between local and forum rates as an increase in the forum rate over the local rate using a formula of the percent change from local to forum rates of (forum-local)/local x 100. *See, e.g., Masias v. HHS*, 634 F.3d 1283 (Fed. Cir. 2011)(accepting as reasonable the special master's determination that a $220 and $350 forum rate results in a 59% differential; *See also Garrison v. HHS*, No. 14-762, 2016 WL 3022076, at n. 12, *aff'd* 128 Fed. Cl. 99 (2016) (explaining that percent differentials cited in appellate decisions such as *Davis*, *Masias*, and *Avera* express the differential as an increase in forum rates and derive from a percent increase formula of (forum rate – local rate)/local rate x100); *Dezern v. HHS*, No. 13-643V, 2016 WL 6678496, at n. 4. (Fed. Cl. Spec. Mstr. Oct. 14, 2016) (noting the same formula). Applying this previously-accepted formula here results in a 25% difference between local versus forum rates as follows: [($325 - $260)/$260 x 100 = 25%].

estimates that a fair national rate would be $500 an hour. (*Id*.)  Ms. Henning-Rutz has practiced law in Montana since 2006, practicing primarily in plaintiff's personal injury and complex business litigation. (ECF No. 46-4, p. 2.)  She avers that her local rate is $275 and estimates that a fair national rate would be between $375 and $400 per hour. (*Id*.)

Respondent filed his response to petitioner's application for fees and costs on March 16, 2017. (ECF No. 47.)  Respondent contends that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for respondent in the resolution of a request by a petitioner for an award of attorneys' fees and costs." (*Id*., p. 1.)  Respondent adds, however, that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." (*Id*., p. 2.)  Respondent "respectfully recommends that the Chief Special Master exercise her discretion and determine a reasonable award for attorneys' fees and costs." (*Id*., p. 3.)

## II.    Background Information About Attorneys' Fees and Costs Litigation

Prior to 2016, respondent routinely resolved attorneys' fees and costs informally by stipulation.  Many of these stipulations were based, in part, on ongoing agreements between respondent and the petitioner's counsel of record.  *See, e.g., Dorego v. HHS*, No. 14-337V, 2016 WL 1635826 (Fed. Cl. Spec. Mstr. April 4, 2016) (describing respondent's prior agreement with the Homer firm spanning from 2006 until 2015).  The breakdown of respondent's agreement with the firm of Conway, Homer & Chin-Caplan led to Special Master Gowen's below-discussed decision *McCulloch v. HHS*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), regarding appropriate forum rates for the Vaccine Program, the reasoning and hourly rates from which have since been widely followed.  Respondent did not seek review of the *McCulloch* decision, but instead contended in subsequent cases that while respondent "stands by the arguments and evidence she put forth in *McCulloch* . . . in light of the decision in *McCulloch* . . . respondent has determined that her resources are not wisely used by continuing to litigate the issues addressed in that decision." *Dorego*, 2016 WL 1635826, at *3 (quoting respondent's response to petitioner's motion for attorneys' fees and costs).

Subsequently, beginning in early 2016, respondent began routinely asserting in many cases, as he does in this case, that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for respondent in the resolution of a request by a petitioner for an award of attorneys' fees and costs." *See, e.g. DiPietro v. HHS*, No. 15-742V, 2016 WL 7384131, at *1 (Fed. Cl. Spec. Mstr. Oct. 6, 2016) (quoting respondent's brief).  Respondent has further declined to continue entering into stipulations regarding attorneys' fees and costs.  This has had the effect of increasing attorneys' fees litigation overall and has resulted in numerous instances, such as Ms. Travis's prior *Smith* case cited above, where special masters have issued fee decisions based on motion practice even though "[r]espondent has formally represented that she does not object to the sum requested." *Smith*, 2016 WL 7574691.

4

## III.   The Special Master's Authority to Determine the Amount of Fees and Costs

Since the petition for compensation was successful, petitioner is entitled to *reasonable* attorneys' fees and costs. *See* § 15(e)(1) (emphasis added).  Reasonable attorneys' fees and costs in Vaccine Act cases are determined using the lodestar approach, which begins with an assessment of a reasonable hourly rate multiplied by a reasonable number of hours expended in the case.  *Avera v. HHS*, 515 F.3d 1343,1347-48 (Fed. Cir. 2008.)

The determination of the amount of reasonable attorneys' fees is within the special master's discretion. *See, e.g., Saxton v. HHS,* 3 F.3d 1517, 1520 (Fed. Cir. 1993).  Special masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. HHS*, 22 Cl. Ct. 750, 753 (Fed. Cl. 1991). Moreover, special masters are entitled to rely on their own experience and understanding of the issues raised. *Wasson v. HHS*, 24 Cl. Ct. 482, 483 (Fed. Cl. 1991), *aff'd in relevant part,* 988 F.2d 131 (Fed.Cir.1993) (per curiam).

Petitioner "bears the burden of establishing the hours expended" and the reasonableness of the requested fee award. *Wasson,* 24 Cl. Ct. at 484. Notwithstanding respondent's failure to raise any specific objections to petitioner's fee application, "the Special Master . . . [is] not limited to endorsing or rejecting respondent's critique." *Duncan v. HHS*, No. 99-455V, 2008 WL 4743493 (Fed. Cl. 2008).  Furthermore, "the Special Master [has] no additional obligation to warn petitioners that [she] might go beyond the particularized list of respondent's challenges." *Id*.

## IV.   Guidance and Background Regarding Local Versus Forum Rates In the Vaccine Program

The appropriate hourly rate for counsel in Vaccine Act litigation is the forum rate, unless the "*Davis* exception" applies. *Avera,* 515 F.3d at 1349 (citing *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA,* 169 F.3d 755 (D.C.Cir.1999)); *see also Rodriguez v. HHS,* 632 F.3d 1381, 1384 (Fed. Cir. 2011) (affirming a determination of the forum rate in Vaccine Act cases). The *Davis* exception applies when the bulk of the work in a case is performed outside the forum (Washington, DC, in Vaccine Act cases), and there is a very significant difference between local and forum rates. *Avera,* 515 F.3d at 1349.

Several Federal Circuit precedents have addressed the application of the *Davis* exception to vaccine cases, but guidance from these decisions has been limited to circumstances where the difference between local and forum rates was in excess of 50%. *Avera*, 515 F.3d at 1350 (noting forum rates to be "nearly three times" the local rate); *Masias v. HHS*, 634 F.3d 1283, 1288 (Fed. Cir. 2011) (noting the special master's finding of a 59% difference between forum and local rates); *Hall v. HHS,* 640 F.3d 1351, 1357 (Fed.Cir.2011)(noting a 59% difference between forum and local rates).[8] The

---

[8] In *Hall*, the Federal Circuit noted that the special master had based his opinion on cases with fee differentials ranging from 46% to 60%, but determined only the 59% difference in the case at hand to be very significantly different. 640 F.3d at 1357.

*Davis County* case itself involved a 70% difference between rates. *Davis County*, 169 F.3d at 757 (noting the D.C. rates at issue to be "approximately 70% higher" than the local rate).

More recently, the *McCulloch* decision exhaustively examined the question of appropriate hourly rates in the Vaccine Program and established tiered ranges of reasonable attorney forum rates based on years of legal experience.[9] *McCulloch*, 2015 WL 5634323. Using those rates, Special Master Gowen set rates for several attorneys practicing in Boston, Massachusetts.[10] In reaching his conclusion, Special Master Gowen rejected respondent's contention that Washington, D.C. forum rates are 52% higher than in Boston. *McCulloch*, 2015 WL 5634323, at *7-13. He found instead that "while the prevailing rates in Washington, D.C., appear to be somewhat higher than Boston rates, they are not significantly so." *McCulloch*, 2015 WL 5634323, at *13.

Although respondent did not seek review in *McCulloch*, much of the reasoning of the *McCulloch* decision was later examined approvingly on review at the Court of Federal Claims in *Garrison v. HHS*, 128 Fed. Cl. 99 (2016). In the underlying *Garrison* decision, Special Master Gowen extended his *McCulloch* analysis and concluded that an attorney in Twin Falls, Idaho, was also entitled to forum rates, because the 18.5% difference between that attorney's local and proposed forum rates was not very significantly different under *Avera*. *Garrison v. HHS*, 14-762V, 2016 WL 3022076, at *7 (Fed. Cl. Spec Mstr. April 29, 2016), *aff'd* 128 Fed. Cl. 99 (2016). On review, Judge

---

[9] After discussing the potential approaches to setting a forum rate and reviewing cases and material from both within and without the Vaccine Program, Special Master Gowen concluded that the following factors should be considered: (1) the prevailing rate for comparable legal work in Washington, DC; (2) the prevailing rate for cases in the Vaccine Program; (3) the experience of the attorney(s) in question within the Vaccine Program; (4) the overall legal experience of the attorney(s); (5) the quality of work performed by the attorney(s) in vaccine cases; and (6) the reputation of the attorney(s) in the legal community and community at large. *McCulloch,* 2015 WL 5634323, at *17. Applying those factors, Special Master Gowen found that a reasonable forum rate for Vaccine Program cases is: $350-425 per hour for attorneys with 20 or more years of experience, $300-375 an hour for attorneys with 11 to 19 years of experience, $275 to $350 an hour for attorneys with eight to ten years of experience, and $225 to $300 per hour for attorneys with four to seven years of experience. *McCulloch,* 2015 WL 5634323, at *19. Special Master Gowen further noted that "[t]he higher end of the range should be awarded to those with significant Vaccine Program experience who perform high quality legal work in vaccine cases." *Id*.

[10] Specifically, the following rates were awarded in the *McCulloch* decision:

| | |
|---|---|
| Kevin Conway (45 years legal experience, 26 years vaccine experience) | $415 |
| Ronald Homer (24 years legal experience, 22 years vaccine experience) | $400 |
| Sylvia Chin-Caplan (30 years legal experience, 22 years vaccine experience) | $400 |
| Christine Ciampolillo (6 years vaccine experience) | $300 |
| Amy Schwader (7 years vaccine experience) | $285 |
| Joseph Pepper (6 years legal experience, 5 years vaccine experience) | $290 |
| Meredith Daniels (5 years vaccine experience) | $280 |
| Law Clerks | $145 |
| Paralegals | $135 |

*McCulloch*, 2015 WL 5634323, at *19-21.

Kaplan concluded that Special Master Gowen had not abused his discretion. Contrasting the facts of *Garrison* with *Avera* and with the *Davis County* case itself, she observed that while the 18.5% difference found in *Garrison* was "not insignificant," it was not unreasonable for the Special Master "to conclude – on balance – that the use of the forum rate would not result in 'vast overcompensation' of counsel." *Garrison*, 128 Fed. Cl. at 108.

Consistent with *Garrison*, the undersigned found in *Henry v. HHS* that attorneys practicing in Memphis, Tennessee, were entitled to forum rates based on a differential of between 17-21% between applicable local and forum rates.  No. 15-545V, 2016 WL 7189925 (Fed. Cl. Spec. Mstr. Nov. 4, 2016).  In contrast, special masters have also found 22-27% and 38% differentials to be significantly different under the meaning of *Avera,* awarding fees at a local rate for attorneys in Memphis and Pittsburgh respectively.  *Hoehner v. HHS*, No. 14-637, 2016 WL 7048793 (Fed. Cl. Spec. Mstr. Nov. 7, 2016); *Barrett v. HHS*, 2014 WL 2505689 (Fed. Cl. Spec. Mstr. May 13, 2014).

In *Auch v. HHS*, No. 12-673V, 2016 WL 3944701 (Fed. Cl. Spec. Mstr. May 20, 2016), the special master rejected petitioner's request that her Cheyenne, Wyoming attorney be compensated at forum rates consistent with *McCulloch*.  The special master stressed that "a practitioner living in a rural or sparsely populated region of the United States will inherently be unable to command the same hourly rates that a city practitioner would."  *Id*. at *12. The special master noted that the forum rate request in that case would have increased counsel's rate by 41% over his prior local rate and suggested that any increase over local rates of 25% or more appears presumptively to be a "very significant" difference. *Id*. at *11.

Significantly, however, analysis of the *Davis* exception need not end in a precise mathematical calculation. *Dezern v. HHS*, No. 13-643V, 2016 WL 6678496, at *3, n.5. (Fed. Cl. Spec. Mstr. Oct. 14, 2016) (quoting the Federal Circuit language in *Hall* that the special master must consider "the evidence before them and their own trial experience in similar litigations" before observing in a footnote that district courts take a cost-based, "common-sense view" regarding application of the *Davis* exception); *see also J.B. v. HHS*, No. 15-67V, 2016 WL 4046871 (Fed. Cl. Spec. Mstr. July 8, 2016) (awarding local rates to attorneys in Hershey, Pennsylvania, without calculating the mathematical difference against applicable forum rates).  Indeed, the Federal Circuit has stressed that there is no bright-line rule for when the *Davis* exception applies, calling such a rule "stifling and impractical." *Hall*, 640 F.3d at 1357.  Rather, the determination is within the special master's discretion. *Id*. at 1356. In addition to the evidence in the record, a special master may use her experience in the Vaccine Program to determine an hourly rate. *Id*. at 1357; *Saxton,* 3 F.3d at 1521. As Judge Kaplan noted in *Garrison*, *supra*, "each request for fees turns on its own specific facts and circumstances."[11] 128 Fed. Cl. at 109.

---

[11] For some localities, special masters have reached differing conclusions on whether to award local or forum rates.  For example, in the above-cited *Dezern* decision, Special Master Corcoran acknowledged that he was departing from prior decisions by other special masters in finding that attorneys in Sarasota, Florida, are entitled to compensation at forum rates.  *Dezern*, 2016 WL 6678496, at *6.  Similarly, as noted above, there are differing decisions regarding whether Memphis attorneys should receive forum or local rates.  *Compare Henry*, 2016 WL 7189925 and *Hoehner,* 2016 WL 7048793. Thus, Judge Kaplan

**V.      Setting Counsel's Hourly Rate in This Case**

**A.      Examining the Appropriate Local Rate**

Under the lodestar approach, whether looking at the local or forum rate, the undersigned must award "rates that are compatible with the prevailing market rate." *Rupert v. HHS*, 52 Fed. Cl. 684, 688 (2002); *Avera*, 515 F.3d at 1349.  The prevailing rate is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum v. Stenson*, 465 U.S. 886, 896, n.11 (1984).) Prior Vaccine Act cases have noted that petitioners may demonstrate a prevailing market rate in a number of ways, including:

> (1) affidavits of other attorneys or experts; (2) citations to prior precedents showing reasonable rate adjudications for the fee application, for comparable attorneys, or for comparable cases; (3) references to fee award studies showing reasonable rates charged or awarded in the relevant community; (4) testimony of experts or of other attorneys in the relevant community; (5) discovery of rates charged by the opposing party; (6) reliance on [the] court's own expertise to recognize applicable prevailing rates.

*Morris v. HHS*, 20 Cl. Ct. 14, 28-29 (1990).

Special masters have in several recent cases relied, at least in part, on local federal district court cases involving fee-shifting statutes in order to determine the applicable local rate.  *See, e.g.*, *Henry*, 2016 WL 7189925 (assessing local rates for Memphis, Tennessee, based in part on decisions reported by the U.S. District Court for the Western District of Tennessee)*; Garrison,* 2016 WL 3022076 (referencing decisions reported by the U.S. District Court for the District of Idaho); *Dezern*, No. 13-643V (assessing local rates for Sarasota, Florida, in light of decisions reported by the U.S. District Court for the Middle District of Florida).  Moreover, this approach has been affirmed on review at the Court of Federal Claims. *Garrison*, 128 Fed. Cl. at 106-07.

**i.      Petitioner's Contentions**

Petitioner's analysis of local rates primarily addresses the appropriate rate for Ms. Travis, the attorney of record.[12]  (ECF No. 46, p. 5, n. 1.)  Petitioner identified applicable local rates of $250 and $260 per hour for work performed by Ms. Travis in 2015 and 2016 respectively. (*Id.*, p. 7.)  Ms. Travis has not asserted that she has ever charged a client the $250 or $260 rate she identified in her supplemental brief.  Nor does she identify any other local hourly rate charged for her services. Rather, in support

---

observed in *Garrison* that "a special master's decision in any one case cannot 'eliminate' the *Davis County* exception." 2016 WL 4784054, at *9.

[12] Petitioner's supplemental brief makes no specific argument regarding appropriate local rates for either Mr. Henning or Ms. Henning-Rutz though each attorney cited a previously-charged local rate in their respective affidavits.

of the requested rates, petitioner cites three decisions involving environmental litigation from the federal district court located in Missoula, Montana, which petitioner indicates is the closest federal district court to Kalispell, Montana, where her attorneys practice. (ECF No. 46, p. 5, n. 1.)

In *Native Ecosystems Council v. Weldon*, 921 F.Supp.2d 1069 (D. Mont. Feb. 4, 2013), the court awarded attorneys' fees pursuant to the Equal Access to Justice Act (EAJA), which allows for fee-shifting in favor of prevailing parties.[13]   Under the EAJA, fee awards are limited to a statutorily prescribed hourly rate of $125 per hour unless "the cost of living or a special factor . . . justifies a higher fee."[14]  28 U.S.C. § 2412(d)(2)(A).  The court determined that the attorneys involved in the case – attorneys named Smith and Bechtold – were entitled to rates higher than the cost-of-living adjusted rates because they had special education and previous experience in environmental and natural resources fields.[15] *Weldon*, 921 F.Supp.2d at1078.  For Ms. Smith's work in the case, the court applied rates of $200, $210, and $220 per hour for work performed in 2010, 2011, and 2012 respectively. *Id*. at 1079.

In *Alliance for the Wild Rockies v. Kruger, et al.*, No. CV-12-150-M-DLC, 2014 WL 46498 (D. Mont. Jan. 3, 2014), plaintiff moved for attorneys' fees and costs pursuant to both the EAJA and the Endangered Species Act ("ESA"). *Kruger*, 2014 WL 46498, at *1-2. The court noted that both fee-shifting regimes share the same prevailing party requirement under Ninth Circuit precedent. *Id*.  The court awarded Ms. Smith hourly rates of $220 and $230 for work performed in 2012 and 2013. *Id*. at *5. Citing the above-discussed *Weldon* decision, the court agreed that the relevant community for determining a prevailing rate was limited to environmental litigation attorneys and reduced Bechtold's hourly rate to the cost-adjusted statutory rate for the EAJA for tasks that did not require specialized knowledge. *Id*. at 6.

---

[13] *See* 28 U.S.C.A. § 2412(a)(1).  A party is a prevailing party if it has reached a favorable result overall, regardless of whether it has prevailed on specific claims. *Weldon*, 921 F.Supp.2d at 1079.  However, the court may not award fees for a claim that is not related in fact or law to the result. *Id*. The plaintiff in *Weldon* had also pursued claims under the Appeals Reform Act and the Endangered Species Act, but had abandoned those claims on summary judgment and was not awarded fees pursuant to those acts. *Id*. at 1080.

[14] Within the Ninth Circuit, EAJA rates are adjusted for cost of living increases in accordance with *Thangaraja v. Gonzales*, 428 F.3d 870 (9th Cir. 2005) which applied cost of living increases by multiplying the statutory rate by the annual average consumer price index figure for all urban consumers ("CPI-U"). The resulting rates are posted on the Ninth Circuit's webpage at http://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039 (last accessed March 2, 2017). Significantly, however, the Federal Circuit has noted the fee shifting provision of the Vaccine Act to be distinct from the EAJA. *Parrott v. Shulkin*, --- F.3d ----, 2017 WL 957237, at *4, n.4 (Fed. Cir. 2017) (distinguishing as "textually different" the Vaccine Act's award of "reasonable attorneys' fees" from the statutory cap and cost of living allowance included in the EAJA).

[15] Neither attorney's level of legal experience is noted in the decision, but petitioner's counsel in this case represents that attorney Smith is a 2008 law school graduate. (ECF No. 46, p. 7.) Ms. Travis indicated that she and Ms. Smith were classmates in law school. (*Id*.)  Ms. Travis has not represented that she has experience comparable to that of Mr. Bechtold.  Thus, this decision will focus on the rates awarded to Ms. Smith.

In *Alliance for the Wild Rockies v. U.S. Dept. of Agriculture, et al.*, No. CV 11-76-M-CCL, 2016 WL 4766234 (D. Mont. Sept. 13, 2016), the plaintiff requested an award for attorneys' fees and costs pursuant to the fee shifting provision of the ESA.  Following a lodestar analysis, the court determined appropriate hourly rates for plaintiff's counsel of between $210 and $230 for attorney Smith for work performed from 2011 through 2013. *U.S. Dept. of Agriculture*, 2016 WL 4766234, at *7.  The court awarded these rates as reasonable based on the analyses in the above-discussed *Weldon* and *Kruger* decisions.  *Id*.

Noting that Smith was awarded $10 yearly increases in these decisions through 2013, petitioner proposes that a fair hourly rate would continue these increases for subsequent years. (ECF No. 46, p. 7.)  She contends that "each of these opinions recognizes that it is reasonable to increase a 2008 law school graduate's hourly rates by $10 per year in the District of Montana." (*Id*.)  Thus, petitioner reasons that a reasonable rate for Ms. Travis would be $250 for work performed in 2015 and $260 for work performed in 2016.[16] (*Id*.)

In addition to the above, petitioner also cited *Nance v. Jewell*, No. CV 06-125-BLG-DLC, 2014 WL 948844 (D. Mont. Mar. 12, 2014), a case decided by the Billings Division of the District Court of Montana rather than the closer Missoula Division.  In that case, the court awarded attorneys' fees pursuant to the Surface Mine Control and Reclamation Act.[17] *Nance*, 2014 WL 948844, at *2.  The court observed that for an attorney with 9-12 years of experience, $300 an hour would be high for Montana as a whole, but found the amount reasonable for Billings, Montana, where counsel practiced. *Id*. at *7-8.  The plaintiff submitted an affidavit by an attorney which indicated that his "younger partners" with 9-12 years of experience charged $275 per hour. *Id*. at *7.

Finally, Mr. Henning and Ms. Henning-Rutz have also provided information regarding their own rates which bears on the question of an appropriate local rate for all three counsel in this case.  In their respective affidavits, Mr. Henning and Ms. Henning-Rutz indicate that they have charged local rates of $300 per hour and $275 per hour respectively.[18] (ECF Nos. 4-3, 46-4.)

---

[16] Petitioner does not specifically identify a rate for Ms. Travis's work in 2014, but an hourly rate of $240 for work performed in 2014 would be consistent with petitioner's argument.

[17] That statute allows for an award of attorneys' fees and costs "whenever the court determines such award is appropriate." 30 U.S.C. § 1270(d).   Such awards should be allowed only "where the claimant achieved 'some degree of success on the merits' of its claim." *Nance*, 2014 WL 948844 (quoting *Ohio River Valley Environmental Coalition, Inc. v. Green Valley Coal Co.*, 511 F.3d 407, 413, 415-18 (4th Cir. 2007).)  The award is calculated using the lodestar approach and is limited to hours associated with claims tied to the resolution of the action. *Nance*, 2014 WL 948844, at *2.

[18] Neither affidavit sets forth the years during which these rates were charged.

## ii.    Identifying the Applicable Local Rate

The above-discussed *Weldon*, *Kruger*, and *U.S. Dept. of Agriculture* decisions provide some guidance, but do not fully support petitioner's position.  There are a number of reasons why these cases do not allow for the type of direct comparison and extrapolation of rates that petitioner asserts.

First, each of these cases involved a fee-shifting regime that included a prevailing party requirement.  It is well established in this Program that direct comparisons between Vaccine Act cases and other fee-shifting schemes are not appropriate because petitioners in this Program are entitled to reasonable attorneys' fees and costs – win or lose – provided that the claim is brought in good faith and there is a reasonable basis for the claim.  *See* § 15(e)(1).  For this reason, rates outside the Vaccine Program must be adjusted before they can be directly compared.  *See, e.g., McCulloch*, 2015 WL 5634323, at *19; *see also Henry*, 2016 WL 7189925, at *6 (discussing petitioner's application of a "risk premium" before drawing comparisons to other types of fee-shifting cases).  In *Garrison,* for example, Special Master Gowen suggested that 18.3% is an appropriate discount rate. *Garrison*, 2016 WL 3022076, at *4.

Additionally, in *Weldon*, *Kruger*, and *U.S. Dept. of Agriculture*, the relevant legal community was limited to attorneys practicing environmental law.[19]  Moreover, the attorneys in those cases were paid hourly rates that included an enhancement due to their skill and expertise in subject matter touching on the type of environmental litigation at hand.  Indeed, in *Kruger* the attorneys did not even receive these higher rates for all work performed in that case. *Kruger*, 2014 WL 46498, at *6.  In this case, however, none of the attorneys had significant experience litigating cases within this Program.  Neither Mr. Henning nor Ms. Henning-Rutz has ever been counsel of record in a Vaccine case and their involvement in this case was also limited.  Ms. Travis has been attorney of record in two vaccine cases including the instant one.

Finally, petitioner's extrapolation of 2015 and 2016 rates is speculative.  Although petitioner is correct that the *Kruger*, *Weldon* and *U.S. Dept. of Agriculture* courts accepted yearly increases of $10 per hour as reasonable, those cases all looked at attorney work occurring during a similar two to three year period ending in 2013 and none of the decisions explicitly described the basis for the increases.  The attorney rates in those cases would be based in part on the ability *at that time* of plaintiffs to secure representation in the specific area of law at issue.  *See, e.g., Weldon*, 921 F.Supp.2d at 1078.  Under Ninth Circuit precedent, the fees paid pursuant to the EAJA would otherwise have been increased for cost of living in accordance with the CPI-U. (*See* n.13, *supra*.) Petitioner has no basis on this record to assert that these attorneys would be permitted to continue increasing their rates by this amount in subsequent years.

---

[19] The persuasive value of any individual case depends in significant part on the extent to which it discusses attorney services "similar" to that performed in the Vaccine Program.  *Avera*, 515 F.3d at 1348; *Rodriguez*, 632 F.3d at 1384-86 (distinguishing streamlined Vaccine Act cases from the complex federal litigation for which the *Laffey* Matrix is used).

The undersigned further notes that in *Cottonwood Environmental Law Center v. U.S. Sheep Experimental Station*, No. CV 14-192-M-DLC, 2016 WL 7106017 (D. Mont. Dec. 5, 2016), an attorney sought to recover fees pursuant to the ESA at a rate of $240 per hour for work performed in 2014, 2015, and 2016.  Like the petitioner here, the plaintiff in that case cited Ms. Smith's $230 per hour rate for 2013 in the above-discussed *Krueger* decision.  The Missoula Division declined to allow a $10 rate increase over the *Krueger* rate because it was not sufficiently supported. *Id*. at *7.  The court indicated that an hourly rate of $230 for work performed through 2016 "remains reasonable, if not generous." *Id*.

Moreover, in *Nance, supra*, attorneys in Billings, Montana, cited rates between $275 and $300 an hour for partners with 9-12 years of experience. The court advised, however, that such rates would *not* be applicable throughout all of Montana and would be high outside of Billings.[20]  In that regard, it is significant that Mr. Henning, an attorney with 30 years of experience, identified a local rate of $300 per hour. (ECF No. 46-3.) This is far lower than the $500 per hour awarded to the senior attorney in *Nance* and on a par with the less experienced attorneys in that case.  2014 WL 948844, at *4.  That Mr. Henning, an attorney with 30 years of experience, would aver that he charges a local rate of $300 per hour, the same as the Billings attorneys with 9-12 years of experience, further suggests that Ms. Henning-Rutz's and Ms. Travis's proposed local rates are inflated.

Both Ms. Henning-Rutz and Ms. Travis have experience comparable to the 9-12 years of experience discussed in *Nance*. Ms. Henning-Rutz, admitted in 2006, now has about eleven years of legal experience. (ECF No. 46-4.)  Ms. Travis, admitted in 2008, has approximately nine years of legal experience at the time of application. (ECF No. 44-9.).  Therefore, their local rates should fall below the $275-$300 discussed in *Nance* and more reasonably resemble the rate awarded in *Cottonwood, supra*.  Thus, considering the record as a whole, and mindful of all of the above-discussed contentions the undersigned is not persuaded that the $275 and $250/$260 rates identified for Ms. Henning-Rutz and Ms. Travis are appropriate local rates.  Rather, the undersigned concludes that a more appropriate local rate for both Ms. Travis and Ms. Henning-Rutz is $230 per hour for all work performed in this case.

Additionally, the undersigned concludes that a reasonable local rate for Mr. Henning is $280 per hour.  Although Mr. Henning's suggested local rate of $300 per hour does not appear wholly unreasonable, the undersigned stresses that he has no prior vaccine experience and had only a small role in the prosecution of this case.  Thus, a reduction from that rate is warranted.  Moreover, there is little in the record addressing Mr. Henning's rate.  Of note, Richard Gage, an attorney with approximately 25 years of experience and significantly more vaccine experience, based in Cheyenne,

---

[20] For example, in *Jackson v. Board of Trustees of Wolf Point, Montana*, the Great Falls Division characterized a rate of $200 per hour as "moderately above average for a Montana attorney."  No. CV-13-65-GF-BMM-RKS, 2014 WL 1794551, at *4 (D.Mont. April 21, 2014).  However, that decision does not address the experience level of the attorneys involved.

Wyoming, has been awarded local rates of up to $300 per hour. *See Auch*, 2016 WL 3944701, at *12.

### B.   Examining the Appropriate Forum Rate

As noted above, in *McCulloch*, Special Master Gowen found that a reasonable forum rate for Vaccine Program cases is: $350-425 per hour for attorneys with 20 or more years of experience, $300-375 an hour for attorneys with 11 to 19 years of experience, $275 to $350 an hour for attorneys with eight to ten years of experience, and $225 to $300 per hour for attorneys with four to seven years of experience. *McCulloch,* 2015 WL 5634323, at *19. Special Master Gowen further noted that "[t]he higher end of the range should be awarded to those with significant Vaccine Program experience who perform high quality work in vaccine cases." *Id.* The undersigned finds *McCulloch*, which is extensively reasoned, to be persuasive, and adopts Special Master Gowen's tiered framework for the instant analysis.[21]

### i.   Petitioner's Contentions

In this case, all three attorneys who have worked on this case request an hourly rate of $325 per hour.  (ECF No. 46, p. 5, n. 1.)  However, these attorneys do not all fall within the same tier under *McCulloch*.  Indeed, contrary to the $325 requested in this instance, Mr. Henning and Ms. Henning-Rutz asserted that fair national rates for their time would be $500 and $375-400 per hour respectively.  (ECF Nos. 46-3, 46-4.)

As noted above, Mr. Henning now has over 30 years of legal experience.  (ECF No. 46-3.)  At the time of his billing in this case in 2014 and 2015, he had 29 and 30 years of experience.  Ms. Henning-Rutz now has about eleven years of legal experience. (ECF No. 46-4.)  In 2014 and 2015, she had about eight to nine years of experience.  Ms. Travis has approximately nine years of legal experience at the time of application. (ECF No. 44-9.)  In 2014, 2015, and 2016, she had between six to eight years of legal experience.

### ii.   Identifying the Applicable Forum Rate

At the time they performed work in this case, Mr. Henning and Ms. Henning-Rutz had experience equivalent to the top of their *McCulloch* tiers (20-30 years of experience for Mr. Henning and 8-10 years for Ms. Henning-Rutz). When she began working on this case, Ms. Travis fell within the tier for 4-7 years of experience.  During the pendency of this case, Ms. Travis moved into the 8-10 year tier.  Although Ms. Henning-Rutz has more overall legal experience than Ms. Travis, Ms. Travis has more vaccine experience and significantly more involvement in this case as counsel of record.

There is a competing consideration, however, in that all three attorneys have limited experience litigating cases within this Program.  As noted above, Mr. Henning and Ms. Henning-Rutz have had only limited involvement in this case and have never

---

[21] These tiers have also been adopted as the Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016, which is posted on the U.S. Court of Federal Claims website at http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2015-2016.pdf.

been counsel of record in a vaccine case. Ms. Travis has been attorney of record in two vaccine cases including the instant one. For this reason, it would not be reasonable to award these attorneys rates at the top of their respective tiers. *McCulloch,* 2015 WL 5634323, at *19.

Thus, the undersigned concludes that an appropriate forum rate for Mr. Henning would be $380 per hour for all work performed in this case rather than the $325 requested by petitioner. The undersigned is satisfied, however, that petitioner has identified a reasonable forum rate for Ms.Travis and Ms. Henning-Rutz of $325 per hour for all work performed in this case.

The selected rates are also consistent with prior decisions in which this framework has been used to determine forum rates for other experienced Vaccine Program counsel. *See, e.g., Boylston v. HHS,* No. 11-117V, 2016 WL 3080574 (Fed. Cl. Spec. Mstr. May 10, 2016)(awarding rates of between $400-$430 per hour for work performed in 2015 and 2016 to attorneys Clifford Shoemaker and Renee Gentry, both of whom have over 20 years of legal experience and extensive vaccine litigation experience); *Rodd v. HHS*, No. 13-122V, 2016 WL 2727147 (Fed. Cl. Spec. Mstr. April 13, 2016)(finding reasonable rates of $400 per hour for Lawrence Cohan, an attorney with 36 years of legal experience and 25 years of vaccine experience, but $275 per hour for David Carney, an attorney with 5.5 years of vaccine experience); *L.A. v. HHS*, No. 12-629V, 2016 WL 1104860 (Fed. Cl. Spec. Mstr. Feb. 29, 2016)(following *McCulloch* and awarding Sabrina Knickelbein $350 for work performed in 2015); *Harborth v. HHS*, No. 08-777V, 2016 WL 3176545 (Fed. Cl. Spec. Mstr. May 18, 2016)(finding reasonable rates for attorney Scott Doody, with legal experience of between 6-11 years of experience, ranging from $225 per hour for work performed in 2008 to $300 per hour for work performed from 2013 to 2016); and *Dineen v. HHS*, No. 15-700V, 2016 WL 1627199 (Fed. Cl. Spec. Mstr. April 4, 2016)(ratifying as reasonable a requested rate of $350 per hour for Martin Martinez, an attorney with 35 years of legal experience, but significantly less vaccine experience).

## C. Setting Counsel's Rates

In light of the above findings, the undersigned concludes that the *Davis* exception does apply in this instance and that petitioner's counsel in this case should be compensated at the above-identified local rates of $280 per hour for Mr. Henning and $230 per hour for Ms. Travis and Ms. Henning-Rutz, which are very significantly lower than forum rates. This conclusion is consistent with prior cases as discussed in Section IV above. The rate differential identified in this case is much higher than that identified in *Garrison* and *Henry*, and more resembles other instances, such as *Hoehner*, *Barrett*, and *Auch*, where special masters have considered local rates appropriate.[22] *Auch* is particularly instructive. As noted above, the special master in *Auch* explained that "a practitioner living in a rural or sparsely populated region of the United States will inherently be unable to command the same hourly rates that a city practitioner would."

---

[22] Based on the formula identified in prior vaccine cases (*see* n.7, *supra*), applying Mr. Henning's above-determined forum rate would result in a 36% increase over the local rate identified by the undersigned. For Ms. Travis and Ms. Henning-Rutz, the increase would be even higher at 41%.

*Id.* at *12.  This is consistent with *Davis County* itself, which noted that the local rate exception would not impact "most *cities*." 169 F.3d at 758 (emphasis added).

Moreover, the attorney affidavits in this case further suggest that local rates are more appropriate.  Both Mr. Henning and Ms. Henning-Rutz averred that they have charged local rates in Montana that are distinctly lower than what they believe to be their appropriate "fair" national rate.  (ECF Nos. 46-3, 46-4.)  Mr. Henning in particular described his local rate as "very low compared to my fair national rate."[23] (ECF No. 46-3, p. 2.)  Thus, the attorneys in this case effectively concede that they charge less for local services than they would for an out-of-state practice.  This suggests an awareness by these attorneys that the local legal market dictates a lower prevailing hourly rate. Awarding forum rates to these attorneys would therefore be incongruent with their actual billing practices and would work exactly the type of windfall that the Federal Circuit sought to avoid when deciding *Avera*. 515 F.3d at 1349 (describing the *Davis* exception as preventing "vast overcompensation"); *see also Davis County*, 169 F.3d at 759-60 (reasoning that "[w]hile limiting lawyers to less than their usual rates would present problems for private parties seeking help, limiting lawyers to what they normally receive in their home market should not. Conversely, while awarding higher Washington rates would not make it harder for parties to find counsel, it would produce windfalls inconsistent with congressional intent.").

Although counsel cited the prior *Smith* decision as evidence that Ms. Travis should be compensated at a forum rate of $325 per hour, that decision is not persuasive insofar as it did not include any reasoned explanation addressing counsel's rate.  2016 WL 7574691. Rather, the special master in that case appeared to base his determination on respondent's lack of objection and on the reasonableness of the total amount of petitioner's requested fee award.  *Id*.  In any event, the *Smith* decision does not bind the undersigned. *Hanlon v. HHS*, 40 Fed. Cl. 625, 630 (1998)(noting that "[s]pecial masters are neither bound by their own decisions nor by cases from the Court of Federal Claims, except, of course, in the same case on remand."); *Rodriguez v. HHS*, 2009 WL 2568468, at *23, n. 57 (Fed. Cl. Spec. Mstr. July 27, 2009) (citing *Hanlon* and further noting that "[b]ecause a special master's determination of what constitutes a reasonable hourly rate would ordinarily be a factual, not a legal determination, a decision that a particular hourly rate was appropriate would not bind other special masters or judges.")

## VI.    Reasonable Number of Hours

Upon review of the underlying invoices and billing records, the undersigned finds no cause to reduce the number of hours billed by Mr. Henning or Ms. Henning-Rutz. However, the undersigned has identified a number of necessary reductions to Ms.

---

[23] Mr. Henning averred that he charged $300 per hour in his most recent hourly case, but believes that his fair national rate would be $500 an hour.  (ECF No. 46-3, p. 2.) Ms. Henning-Rutz averred that she has charged a local rate of $275 per hour, but believes a fair national rate would be between $375 and $400 per hour.  (ECF No. 46-4, p 2.)

Travis's billing contained in her invoice for services rendered by The Law Office of Samantha Travis, PLLC. [24]

It is well established that attorneys may not be compensated for professional development concerning the Vaccine Program. *See, e.g., Lord v. HHS*, No. 12-255V, 2016 WL 3960445, at *4 (Fed. Cl. Spec. Mstr. June 30, 2016).   In that regard, the undersigned will not compensate Ms. Travis for the following items, which amount to a total reduction of **6.8** hours:

- On January 25, 2014, Ms. Travis recorded **0.6** hours of time researching U.S. Court of Federal Claims procedure.  (ECF No. 42, p. 57.)

- On April 17, 2014, Ms. Travis recorded **1.5** hours of time inclusive of reviewing her application to the Court of Federal Claims and related correspondence.  (*Id*.)

- On June 4 and 5, 2014, Ms. Travis recorded a further **1.8** hours of time regarding her registration for a CM/ECF account. (*Id*. at 57-58.)

- On January 5, 2015, Ms. Travis recorded **1.0** hour of time devoted to researching the "Special Operations Unit" and contacting an unspecified Wyoming attorney.[25] (ECF No. 52, p. 59.)

- On January 6, 2015, Ms. Travis recorded further unspecified time researching the "Special Operations Unit" within a 4.3 hour block of time. (*Id*.)  During that 4.3 hour block of time, counsel recorded four different tasks.  The undersigned will therefore reduce this entry by only **1.0** hour for the research into the SPU.

- On January 15, 2015, Ms. Travis recorded 1.8 hours of time split between conferring via telephone with the Wyoming attorney and an expert. (*Id*.)  The undersigned reduces this entry by **0.9** hours.

Additionally, on August 19, 2014, Ms. Travis recorded 2 hours of travel time. (ECF No. 52, p. 58.) The undersigned reduces Ms. Travis's billing rate by 50% for this travel time.  *See, e.g., Hocraffer v. HHS,* No. 99-533V, 2011 WL 3705153, at *24 (noting

---

[24] In the fee application, Ms. Travis indicates that her billing is divided between The Law Office of Samantha Travis, PLLC, under the firm of Henning Keedy & Lee, PLLC, and Bryan & Travis, PLLP. (ECF No. 42, p. 5.)  Her accompanying invoices, however, are all under the heading of Bryan and Travis, PLLP. (*Id*., pp. 57-63.)  These billings are divided between two separate invoices.  Invoice number 21769 is for services rendered through April 3, 2015, and reflects a total billing amount ($26,650.00) matching the amount attributed to The Law Office of Samantha Travis, PLLC. (*Id*., pp. 57-60.)  Invoice number 21770 is for services rendered through November 16, 2016.  (*Id*., pp. 61-63.)  That invoice reflects a total amount ($16,085.00) matching the amount attributed to Bryan and Travis, PLLP, in the application.

[25] The undersigned presumes that "Special Operations Unit" refers to the Special Processing Unit ("SPU") to which this case was assigned. (See SPU Initial Order, ECF No. 5.)

that "Special masters consistently award compensation for travel time at 50% of the billing rate in the Vaccine Program.").

In light of these reductions, the undersigned tabulates the reasonable hours expended in this case as follows:

Henning Keedy & Lee, PLLC:

      The Law Office of Samantha Travis, PLLC:
          Full Rate:

| | |
|---|---|
| Billed: | 82 hours |
| Less Reductions: | 6.8 hours |
| Less Adjusted Travel Hours: | 2.0 hours |
| Total: | 73.2 hours |

| | |
|---|---|
| 50% Travel Rate: | 2.0 hours |

| | |
|---|---|
| Mr. Henning: | 4.6 hours |
| Ms. Henning-Rutz: | 6.9 hours |
| Paralegal (KLG): | 9.5 hours |
| Paralegal (MRC): | 1.8 hours |

Bryan & Travis, PLLC:

| | |
|---|---|
| Ms. Travis: | 48.8 hours |
| Paralegal (AJH): | 3.0 hours |

## VII.   Reasonable Attorney Costs

Henning Keedy & Lee, PLLC, seeks reimbursement of $281.00 for costs to the firm associated with Ms. Travis's admission to the bar of the U.S Court of Federal Claims (inclusive of both the bar admission fee and certificate of good standing necessary for application).  (ECF No. 42, pp. 5, 48-50.)[26] Such expenses are not recoverable.  *See, e.g., Velting v. HHS*, No. 90-1432, 1996 WL 937626, at *1-2 (Fed. Cl. Spec. Mstr. Sept. 24, 1996).  The undersigned otherwise finds no cause to reduce the costs requested by either Henning Keedy & Lee, PLLC, or Bryan & Travis, PLLP, except for the cost of petitioner's life care plan which is addressed separately below.

## VIII.   Cost of Petitioner's Life Care Plan

Petitioner also seeks costs associated with the preparation of a life care plan by Helen M. Woodard of ReEntry Rehabilitation Services, Inc., of Lakewood, Colorado in the amount of $22,664.42.  (ECF No. 42, pp. 5, 65-70.)  By the undersigned's tabulation, Ms. Woodard spent a total of 93.92 hours working on this case.  (ECF No. 42, pp. 65-70.)  She billed 51.52 hours at an hourly rate of $175 and 42.4 hours at an

---

[26] In the cost breakdown included with the fee application, counsel incorrectly states that the admission fee is $400.  That is the amount of the filing fee for the instant claim. (ECF No. 42, p. 18.)

hourly rate of $225, resulting in total billing of $18,556.00.[27] (*Id.*)  In addition, Ms. Woodard reported expenses of $1,414.83.  (*Id.*)  Thus, the total cost of petitioner's life care plan was $19,970.83.  Of that amount, $2,000.00 represents a deposit previously paid by Henning Keedy & Lee, PLLC, and included in that firm's costs, leaving a balance of $17,970.83 and not $22,664.42 as petitioner requested.[28] (ECF No. 42, p. 12.)  From this amount, further reductions are necessary.

First, the undersigned notes that Ms. Woodward traveled to Kalispell, Montana, twice and logged a total of 18.33 hours of travel time, all of which she billed at $225 per hour.  As noted above, hourly rates for time spent travelling should be reduced by 50%.  *See, e.g., Hocraffer*, 2011 WL 3705153, at *24; *see also O'Neill v. HHS*, No. 08-243V, 2015 WL 2399211, at *18-19 (Fed. Cl. Spec. Mstr. April 28, 2015) (reducing petitioner's life care planner's hourly rate by 50% for 25 hours of travel time).  This results in a reduction of $2,062.13.  Additionally, the September 28, 2016, invoice reflects $2.33 for "interest on overdue balance." (ECF No. 42, p. 66.)  However, such interest is not recoverable in an action against the government. *Raymo v. HHS*, 129 Fed. Cl. 691, 706 (2016).

Thus, the undersigned reduces petitioner's request for the costs associated with her life care plan by a total of $6,758.05.  Petitioner is awarded reasonable costs of her life care plan as follows:

| | |
|---|---|
| Original Amount Requested: | $22,664.42 |
| Less Undersigned's Correction: | -$4,693.59 |
| Less Travel Reduction: | -$2,062.13 |
| Less Disallowed Interest: | -$2.33 |
| **Total:** | **$15,906.37** |

## IX.  Conclusion

Based on all of the above, the undersigned finds that petitioner's counsel is entitled to reasonable attorneys' fees and costs as follows:

---

[27] Although not explained, it appears from the billing records that Ms. Woodard reduced her hourly rate for time spent engaged in research activities.  The pattern of billing entries is not consistent with an increase in rates over time.

[28] The undersigned's recalculation of the total cost of the life care plan was necessary because the amounts stated both in petitioner's application and in Ms. Woodard's invoices are incorrect.  The earlier invoice of August 11, 2015, shows a total due of $14,166.84. (*Id.*, p. 70.)  The second invoice dated September 28, 2016, reflects additional charges of $3,803.99. (*Id.*, p. 66.)  Together, the sum should be $17,970.83, but is reported first as $22,664.42, before being changed by hand to total $18,036.04. (*Id.*)  Petitioner's fee application cites the higher $22,664.42 figure. (*Id.*, p. 5.)  For these reasons, the undersigned recalculated the invoices and determined the correct total of $17,970.83, resulting in a reduction of $4,693.59 from the amount requested.  Any higher total would not be supported by the invoices provided.  Although petitioner's breakdown of fees and costs (ECF No. 42, p. 5) reflects a separate entry for ReEntry Rehabilitation Services, Inc., the invoices are billed to Bryan & Travis, PLLP. (ECF No. 42, pp. 65, 69.)

Henning Keedy & Lee, PLLC:

    Fees:

The Law Office of Samantha Travis, PLLC:

| | |
|---|---|
| 72.2 hours (at $230 per hr): | $16,606.00 |
| 2 hours (travel) (at $115 per hr): | $230.00 |
| Mr. Henning (4.6 hours at $280 per hr): | $1,288.00 |
| Ms. Henning-Rutz (6.9 hours at $230 per hr): | $1,587.00 |
| Paralegal (KLG) (9.5 hours at $90 per hr): | $855.00 |
| Paralegal (MRC) (1.8 hours at $90 per hr): | $162.00 |
| Fee subtotal: | $20,728.00 |

    Costs:

| | |
|---|---|
| Total requested: | $3,285.23 |
| Less bar admission costs | -$281.00 |
| Costs subtotal: | $3,004.23 |

**Total:**    **$23,732.23**

Bryan & Travis, PLLP:

    Fees:

| | |
|---|---|
| Ms. Travis (48.8 hours at $230 per hr): | $11,224.00 |
| Paralegal (AJH)(3 hours at $75 per hr): | $225.00 |
| Fee subtotal: | $11,449.00 |

    Costs:

Life care plan:

| | |
|---|---|
| Original request: | $22,664.42 |
| Less reductions: | -$6,758.05 |
| | $15,906.37 |
| Additional costs: | $44.37 |
| Costs subtotal: | $15,950.74 |

**Total:**    **$27,399.74**

Overall Amount:

| | |
|---|---|
| Henning Keedy & Lee, PLLC: | $23,732.23 |
| Bryan & Travis, PLLP: | $27,399.74 |

**Total:**    **$51,131.97**

The clerk of the court shall enter judgment in accordance herewith.[29]

**Accordingly, the undersigned awards the total of $51,131.97[30] as a lump sum in the form of a check jointly payable to petitioner and petitioner's counsel Bryan & Travis, PLLP.**

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Chief Special Master

---

[29] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

[30] This amount is intended to cover all legal expenses incurred in this matter.  This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered.  Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein.  *See generally Beck v. Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir.1991).